**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Daniel Eugene LANDIS, II, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2013.

Filed April 8, 2014.

Shawn M. Dorward, Harrisburg, for appellant.

Cory J. Snook, Assistant District Attorney, Mifflintown, for Commonwealth, appellee.

BEFORE: BENDER, P.J., WECHT, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

Appellant, Daniel Eugene Landis, II, appeals from the judgment of sentence entered in the Juniata County Court of Common Pleas after a jury found him guilty of, *inter alia,* driving under the influence (DUI)—incapable of safely driving and DUI—highest rate of alcohol.[1] Appellant claims that he is entitled to (1) a new trial because the finding that his blood-alcohol level was over .16% within two hours of driving was against the weight of the evidence and (2) the suppression of the evidence against him because the arresting officer lacked reasonable suspicion or probable cause to conduct a traffic stop. We hold that Appellant is entitled to a new trial on the count of DUI–highest rate of alcohol because the blood-alcohol test result of .164%, which was relied on by the Commonwealth, was subject to a 10% margin of error and there was no further evidence to sustain the jury's finding that his blood alcohol level was .16% or above within two hours of driving. Additionally, we conclude that the absence of the trial court's statement of its findings of fact and conclusions of law preclude meaningful appellate review of Appellant's challenge to the court's suppression ruling. Therefore, we vacate the judgment of sentence reverse the order denying Appellant's request for a new trial, vacate the order denying suppression, and remand for further proceedings.

Appellant's convictions arise from a traffic stop that occurred at 2:40 a.m. on April 4, 2010. Prior to the stop, Pennsylvania State Troopers Robby J. Murphy and Dustin T. Shaffer were patrolling on northbound State Route 35, when they observed a Chevrolet pickup truck being operated by Appellant. Trooper Shaffer testified that he followed Appellant for two miles. During that time, Appellant weaved within his lane of travel, "cross[ed]" the center double-yellow line on two occasions, and "veered onto" the double-yellow line as a southbound vehicle was passing. N.T. Prelim. Hr'g, 9/8/10, at 5.

The troopers conducted a traffic stop, and after engaging Appellant, Trooper Shaffer smelled a strong odor of alcohol. Appellant admitted he drank alcohol earlier in the evening, and the trooper administered a preliminary breath test, which returned positive for alcohol.[2] The trooper asked Appellant to exit his truck and perform field sobriety tests. Appellant failed the walk-and-turn test, but passed the one-leg-stand test. The trooper noticed that Appellant's eyes were red, and his actions were slow.

The troopers took Appellant into custody and transported him to Lewistown Hospital[3] for blood testing. A medical technician drew Appellant's blood at 3:18 a.m. and conducted a test using an Avid Axsym machine. The testing required that the technician place a reagent in the machine and set up a standard, a control, and the sample of Appellant's blood for testing. Once set, the machine added the reagent and printed the test results of the stan-

---

* Former Justice specially assigned to the Superior Court.

1. 75 Pa.C.S. § 3802(a), (c). Appellant was also convicted of the summary traffic violations of driving on roadways laned for traffic, 75 Pa.C.S. § 3309, and careless driving, 75 Pa.C.S. § 3714.

2. Evidence regarding the administration of the breath test was not admitted at trial.

3. Lewistown Hospital is an approved facility for blood testing. *See* 40 Pa. Bull. 97 (Jan. 2, 2010).

dard, control, and Appellant's blood. The machine reported that Appellant's blood-alcohol content was 163.88 milligrams per deciliter, or .164%.[4]

Appellant was charged with DUI–incapable of safely driving, DUI–highest rate of alcohol, and summary traffic violations. Appellant filed a motion to suppress the evidence obtained following the traffic stop. On March 9, 2011, the suppression court convened a hearing, at which time Appellant and the Commonwealth agreed to incorporate a transcript of the preliminary hearing into the suppression record. N.T. Suppression, 3/9/11, at 3–5. The Commonwealth additionally called Trooper Shaffer to testify. *Id.* at 5. The court, upon consideration of the trooper's testimony and the preliminary hearing transcript, entered an order denying suppression, but did not provide a statement of its findings of fact and conclusions of law.

A jury trial was held on June 1, 2012. The Commonwealth, *inter alia,* called the medical technician who drew Appellant's blood and tested it using the Avid Axsym machine.[5] Appellant cross-examined the technician and the following exchange occurred:

> [Appellant's Counsel:] Are you aware of the margin of error for the Axsym machine that you utilize at Lewistown Hospital?
>
> [Witness:] Yes.
>
> [Appellant's Counsel]: And what's that margin of error?
>
> [Witness:] Ten percent.

> [Appellant's Counsel:] And that ten percent is not taken into consideration with the report of that .16388?
>
> [Witness:] As long as our controls and standards are in.
>
> [Appellant's Counsel:] I don't think I got your response as far as—
>
> [Witness:] No.
>
> [Appellant's Counsel:] ... [T]he margin of error is not taken into consideration with the report of .16388.
>
> [Witness:] No.

N.T., 6/1/12, at 105–06. On redirect examination, the Commonwealth elicited the following testimony from the technician:

> [Commonwealth:] Now you also testified as to the margin of error being ten percent. Is that the same for legal draws and medical draws?
>
> [Witness:] It's—I can't really explain the ten percent. I know this is what we do for our patients. We run it as a patient. So, I mean, the margin of error is—I don't even know how to explain it. It's not only a margin of error. That is what it can deviate from. But if you have a—it needs to be within ten percent. It's not really a margin of error; it's just where we can waiver [sic] from.
>
> [Commonwealth:] Is that the range?
>
> [Witness:] Yes.
>
> [Commonwealth]: Okay. So that can go above or below?

---

4. Although the report also contained readings on the standard and control, those readings were not discussed at trial.

5. The certified record does not contain a copy of the trial transcript. However, Appellant did include a complete copy of the transcript in his reproduced record. The Commonwealth did not object, and the accuracy of

that copy is not in doubt. While we will consider the copy of the trial transcript in the reproduced record, we caution counsel that it is the appellant's burden to ensure that the certified record is complete. *See* Pa.R.A.P. 1921; *Commonwealth v. Brown,* 617 Pa. 107, 117 n. 4, 52 A.3d 1139, 1145 n. 4 (Pa.2012).

[Witness]: Right. That's correct.

*Id.* at 107.

Additionally, Appellant, during his case-in-chief, called Dr. Joseph Citron, M.D., as an expert in, *inter alia*, toxicology and analytical chemistry. *Id.* at 124. The doctor testified that the test performed at Lewistown Hospital was an enzyme assay test designed for clinical use. *Id.* at 141. According to the doctor, an enzyme assay test did not distinguish between ethanol and other alcohols, such as isopropyl alcohol or methanol, and was less reliable than a gas chromatography test. *Id.* at 142–45. Furthermore, the doctor stated that given the testimony regarding a 10% margin of error, a reading of .164 reflected a range between .147 and .180. *Id.* at 147–48. The doctor concluded that the Appellant's reported blood-alcohol content was not reliable. *Id.* at 150–51.

The Commonwealth, in turn, presented rebuttal evidence reiterating that Lewistown Hospital was an approved testing facility. *Id.* at 176. The Commonwealth also established that the laboratory was not required to conduct multiple tests on a single sample or use gas chromatography equipment. *Id.* at 174–76. No further evidence was presented regarding the 10% margin of error associated with the Avid Axsym machine.

The jury found Appellant guilty of both counts of DUI. On July 10, 2012, the trial court sentenced Appellant to serve ninety days' to five years' less one day imprisonment for DUI–highest rate of alcohol and merged the count of DUI–incapable of safely driving. Appellant timely filed a post-sentence motion, which was denied by operation of law on November 16, 2012. This appeal followed.[6]

Appellant presents the following questions for our review:

Whether the trial court's verdict of guilt as to DUI: Highest Rate of Alcohol was against the weight of the evidence where the Lewistown Hospital conducted only one test of Appellant's blood, the Commonwealth's witnesses testified to a ten percent margin of error and the Commonwealth could not scientifically validate said result as it could not be shown to be reliable, reproducible or trustworthy?

Whether the [suppression] court erred in denying Appellant's Motion for Suppression of Evidence when it determined that the motor vehicle stop that led to Appellant's arrest for driving under the influence was supported by either probable cause or reasonable suspicion to believe Appellant drove in violation of the Motor Vehicle Code[?]

Appellant's Brief at 1.

Appellant first argues that the jury's verdict on the count of DUI-highest rate of alcohol was against the weight of the evidence. He contends that the evidence that his blood-alcohol level was .164% was unreliable because the medical technician only took one sample of blood and ran only one test. Moreover, he claims that the result from an Avid Axsym machine is less accurate than a gas chromatography test, the latter of which he refers to as a "gold standard." He also observes that the evidence at trial established a 10% margin of error in the results from the Avid Axsym machine. We are constrained to agree that Appellant is entitled to a new trial on the count of DUI–highest rate of alcohol.

■ Our standard of review our well settled.

---

**6.** Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.

The suppression court and trial court filed separate Pa.R.A.P. 1925(a) opinions.

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [factfinder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Karns,* 50 A.3d 158, 165 (Pa.Super.2012) (citation omitted), *appeal denied,* 619 Pa. 721, 65 A.3d 413 (Pa.2013).

 Moreover,

[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Commonwealth v. Rivera,* 603 Pa. 340, 362, 983 A.2d 1211, 1225 (Pa.2009) (citations and quotation marks omitted).

 Lastly,

[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay,* 619 Pa. 423, 433, 64 A.3d 1049, 1055 (Pa.2013) (citations omitted).[7]

Instantly, Appellant raised his challenge to the weight of the evidence in a post-sentence motion.[8] Specifically, he asserted,

> In the present case, the weight of the evidence was insufficient to warrant a finding of guilt as to Count 1, Driving Under the Influence of Alcohol—Highest Rate. At trial the practices and analytical procedures of ethyl alcohol testing used by Lewistown Hospital were called into question. For the Commonwealth, two witnesses from Lewistown Hospital were called as witnesses to establish [Appellant's] blood alcohol content above a .16. According to the lab report from the hospital, [Appellant's] blood alcohol content was a .163. Of importance with the testimony provided by the Commonwealth's witnesses was the significant lack of scientific reliability and reproducibility as the Hospital only tests one sample. Moreover, each witness from the hospital testified to a ten percent (10%) margin of error with alcohol blood testing, which was not applied to [Appellant's] result of .163.

Appellant's Post–Sentence Mot., 7/19/12, at 2.

The trial court denied Appellant's post-sentence motion, opining,

> In this case, Appellant's blood was drawn and tested at Lewistown Hospital in Lewistown, Pennsylvania. Lewistown Hospital is an approved testing facility whose accreditation may be verified by referencing the Pennsylvania Bulletin, Volume 40, Part 1, pages 92–101, dated January 2, 2010. At the Commonwealth's request, the Court took judicial notice of this fact.
>
> cient of variation so low that his actual BAC could not possibly have been beneath 0.160%. The law simply does not require this level of certainty in criminal verdicts. Rather, the court needed only to be convinced beyond a reasonable doubt. Here, the court having been provided with a particular test result as well as information about the coefficient of variation—that is, information to use in weighing the test result—we cannot say that the evidence of the BAC was so weak and inconclusive that no probability of fact could be drawn therefrom. Therefore, [the defendant's] sufficiency claim fails.

Id. (citations omitted). In light of the standards of review applicable to a challenge to the **weight** of the evidence, as well as the specific relief requested—i.e., a new trial, Sibley does not govern the instant appeal. See Rivera, 603 Pa. at 362, 983 A.2d at 1225.

---

7. We emphasize that Appellant's request for relief based on his weight of the evidence claim is limited to the count of DUI-highest rate of alcohol. Section 3802(c) of the Motor Vehicle Code defines that offense as follows:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c).

We also recognize that when considering a challenge to the sufficiency of the evidence, this Court held that a "coefficient of variation" of +/−3.00% in a blood test indicating that the defendant's blood-alcohol content was .162% did not preclude a conviction for DUI–highest rate of alcohol. See Commonwealth v. Sibley, 972 A.2d 1218, 1219–20 (Pa.Super.2009). The Sibley Court concluded that:

> ... the coefficient of variation in this case implicates the weight, not the sufficiency of the evidence.
>
> [The defendant's] argument would demand a test result so high and/or a coeffi-

8. Appellant mislabeled his post-sentence motion for relief as a request for arrest of judgment. However, the substance of his motion makes clear that Appellant challenged the weight of the evidence and not the sufficiency of the evidence.

At trial, on behalf of the Commonwealth, Lab Director Willie Hinkle described the typical procedures followed when drawing and testing a sample of blood at Lewistown Hospital. Lab Technician Jane [Kifer] testified that she personally drew and tested a sample of Defendant's blood in accordance with established standards, and Appellant's BAC was greater than .16%.[ ] We have every reason to believe [Kifer] followed all standards and procedures as they relate to the testing of Appellant's blood.

We must remember that in cases such as this, the Superior Court evaluates the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. [Kifer's] testimony, coupled with the testimony of two Pennsylvania State Troopers, was sufficient to convince a jury that Appellant was guilty of Driving Under the Influence in violation of Title 75 § 3802(c). Therefore, the verdict cannot be considered "against the weight of the evidence," as Appellant alleges.

Trial Ct. Op., 2/14/13, at 3–4.

■ As indicated in its opinion in support of affirmance, the trial court evaluated the record in a light most favorable to the Commonwealth. *Id.* at 4. However, neither this Court, nor the trial court, is obliged to view the evidence in a light most favorable to the Commonwealth when considering a challenge to the weight of the evidence. *See Rivera,* 603 Pa. at 362, 983 A.2d at 1225. Accordingly, this misapplication of the pertinent legal standards constitutes an abuse of discretion. *See Clay,* 619 Pa. at 432–33, 64 A.3d at 1055.

■ Furthermore, the evidence presented at trial established that the result of 163.88 mg/dl, or .164%, obtained from the Avid Axsym machine was subject to a margin of error of 10%. The Commonwealth's redirect examination of medical technician adduced no additional evidence to guide the jury's deliberations on how to apply the 10% margin of error. Indeed, Appellant's evidence that a reading of .164% merely reflected a range of equally possible results between .147% and .180% was not clarified or challenged by the Commonwealth.

In sum, the trial record did not contain a reasoned basis for accepting the specific reading of .164% as either accurate or precise. There was no support for a finding that the reading registered by the Avid Axsym machine was any more reliable than the possible blood-alcohol levels within the 10% margin of error. Moreover, since there was no direct or circumstantial evidence regarding the possible applications of the 10% margin of error, the trial evidence required the jury to speculate that Appellant's actual blood alcohol content was .16% or higher within two hours of driving. Such speculation defies the requirement that the jury find all facts necessary for a conviction beyond a reasonable doubt. *See generally Commonwealth v. Widmer,* 560 Pa. 308, 318–19, 744 A.2d 745, 751–52 (Pa.2000). Accordingly, we conclude that the trial court abused its discretion when considering Appellant's weight of the evidence claim. Therefore, we vacate the judgment of sentence, reverse the order denying Appellant's post-sentence motion, and hold that Appellant is entitled to a new trial on the count of DUI–highest rate of alcohol.

Appellant next argues that the suppression court erred when denying his motion to suppress the evidence against him. He asserts that the troopers lacked probable cause to conduct a traffic stop for a failure to maintain his lane of travel. He also contends that the troopers lacked reasonable suspicion to conduct a stop for DUI.

Appellant's claims raise two distinct questions: (1) whether the troopers were required to show probable cause to justify the traffic stop; and (2) whether the evidence presented at the suppression hearing met the applicable quantum of proof necessary to justify the stop. We conclude that the Commonwealth was required to show probable cause to justify the stop of Appellant. However, we find that the absence of a statement of the suppression court's findings of fact and conclusions of law precludes meaningful appellate review.

The standards governing a review of an order denying suppression motion are well settled:

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1287 (Pa.Super.2010) (*en banc*) (citation omitted).

This Court has synthesized the governing law regarding the applicable burden of proof necessary to justify a traffic stop.

The Pennsylvania Motor Vehicle Code provides as follows:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehi-

cle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.[ ] § 6308(b).

Thus, § 6308(b) requires only reasonable suspicion in support of a stop for the purpose of gathering information necessary to enforce the Vehicle Code violation. However, in [*Feczko*, 10 A.3d at 1291] this Court held that a police officer must have probable cause to support a vehicle stop where the officer's investigation subsequent to the stop serves no "investigatory purpose relevant to the suspected [Vehicle Code] violation." In *Feczko*, the police officer observed the defendant's vehicle cross over the double yellow median line and the fog line. *Id.* at 1286. During the ensuing vehicle stop, the officer noticed the scent of alcohol on the defendant's breath. *Id.* **Importantly, the officer did not testify that the stop was based on suspicion of DUI.** *Id.* The defendant was convicted of DUI and a motor vehicle code violation, and argued on appeal that the vehicle stop was illegal. *Id.* at 1287.

This Court noted the distinction between "the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." *Id.* at 1289 (*citing Commonwealth v. Sands*, 887 A.2d 261, 270 (Pa.Super.2005)). Whereas a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding is unlikely to lead to further evidence relevant to that offense. *Id.* Therefore:

[A] vehicle stop based solely on offenses not 'investigatable' cannot be justified by a mere reasonable suspicion, because the purposes of a *Terry*[1] stop do not exist—maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Id.* at 1290(quoting *Commonwealth v. Chase*, 599 Pa. 80, 94, 960 A.2d 108, 116 (2008))

In *Feczko*, the police officer stopped the defendant's vehicle solely based on the defendant's failure to maintain a single lane in accordance with 75 Pa.C.S.[ ] § 3309. This Court held, therefore, that the vehicle stop could be constitutionally valid only if the officer could "articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the [Vehicle] Code." *Id.* at 1291. We also held that the police officer's observation of the defendant swerving over the double yellow median line and the fog line created probable cause to suspect a violation of § 3309. *Id.*

*Commonwealth v. Busser*, 56 A.3d 419, 423 (Pa.Super.2012) (emphasis added), *appeal denied*, —— Pa. ——, 74 A.3d 125 (2013).

Instantly, Trooper Shaffer testified "[he] pulled [Appellant] over that evening due to observation made of him operating a motor vehicle travelling north on State Route 35, the violation being Driving Roadways Laned for Traffic[, 75 Pa.C.S. § 3309]."[9] N.T. Suppression, 3/9/11, at 7. There was no express indication that the trooper stopped Appellant in order to conduct additional investigations into a DUI or other impairments of his ability to drive safely. Consequently, a showing of probable cause was necessary to justify the trooper's stop of Appellant for a violation of section 3309. *See Feczko*, 10 A.3d at 1291; *see also Busser*, 56 A.3d at 423.

Instantly, the suppression court did not enter a statement of its findings of fact or conclusions of law when denying Appellant's motion to suppress. *See* Pa. R.Crim.P. 581(I). Although the court did issue a Pa.R.A.P. 1925(a) opinion, it merely concluded that it properly denied Appellant's motion to suppress because the evidence established reasonable suspicion. Suppression Ct. Op., 2/14/13 at 3–5. Therefore, we vacate the order denying Appellant's motion to suppress for reconsideration of the evidence in light of the probable cause standard and the filing of a statement of its findings of fact and conclusions of law. *See Commonwealth v. Grundza*, 819 A.2d 66, 68 (Pa.Super.2003).

Judgment of sentence vacated. The order denying Appellant's post-sentence mo-

9. The statutory requirement that a driver obey a roadway laned for traffic is codified in 75 Pa.C.S. § 3309, which states in relevant part:
 Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

 **(1) Driving within single lane.**—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.
75 Pa.C.S. § 3309(1).

tion for a new trial for DUI–highest rate of alcohol is reversed. The order denying Appellant's motion to suppress is vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.[10]

---

**10.** Given our disposition of this appeal, we decline to retain jurisdiction for the purposes of the filing of a statement of the court's findings of fact and conclusions of law with respect to the suppression issue. *See Grundza,* 819 A.2d at 68. If the court denies Appellant's motion to suppress following reconsideration, it shall reinstate Appellant's conviction for DUI–incapable of safely driving. *See Commonwealth v. DeSantis,* 337 Pa.Super. 70, 486 A.2d 484, 485 (1984). Appellant shall have a right to appeal the suppression court's ruling following reconsideration upon the entry of a final judgment of sentence.