J-A02025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL LLOYD | : | |
| | : | |
| Appellant | : | No. 1395 EDA 2016 |

Appeal from the Judgment of Sentence December 29, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001138-2015

BEFORE: OTT, RANSOM, and FITZGERALD*

MEMORANDUM BY RANSOM, J.:                    **FILED MARCH 20, 2017**

Appellant appeals from the judgment of sentence of seventy-two hours to six months incarceration and a fine of $25.00, imposed December 29, 2015, following a bench trial resulting in his conviction for driving under the influence (DUI) - general impairment, DUI - highest rate of alcohol, and careless driving.[1] We affirm.

The relevant facts and procedural history are as follows. On March 31, 2015, Officer Keith Eichler was dispatched to investigate a 911 call that an unidentified male was screaming on State Route 611 in Tobyhanna, Pennsylvania. *See* Notes of Testimony (N.T.), 10/20/2015, at 5. Upon arrival, Officer Eichler observed a black, Dodge pick-up truck off the road

_____

[1] 75 Pa.C.S. § 3802(a)(1), § 3802(c), § 3714(a).

_____

* Former Justice specially assigned to the Superior Court.

parked at an angle in a ten-foot ditch. *See* N.T. at 5-6. Officer Eichler found Appellant standing nearby alongside the roadway. *Id.* Officer Eichler asked Appellant if he was driving, and Appellant told him no. *Id.* at 6. Initially, Appellant told him that a woman he met at a bar had been driving but that she ran off. *Id.* Appellant could not remember the woman's name. *Id.* The Officer suggested that he would retrieve surveillance from the bar to see if Appellant left with somebody. *Id.* at 8. Thereafter, Appellant acknowledged that he was the one driving the truck. *Id.*

During this conversation, Officer Eichler observed that Appellant had red glossy eyes and had a strong odor of alcohol coming from his person. *Id.* at 7. He asked for Appellant's identification and watched Appellant stumble a few times while trying to get the identification out of his glove compartment. *Id.* Officer Eichler conducted sobriety tests. *Id.* at 9. The Officer asked Appellant to do the Walk-and-Turn test, but he just stood there. *See id.* Appellant did not want to take any more tests and said to the Officer, "I'm done and I'm drunk." *Id.* Appellant was placed in custody for DUI and taken to the DUI Center for a blood test. *See id.* at 17. Later that evening, at 12:52 a.m., Appellant submitted a blood sample, and the results revealed that his blood alcohol content was 0.23%. *See id.* at 19, Commonwealth's Exhibit 2.

Following a non-jury trial in October 2015, the court found Appellant guilty of the DUI-related charges and careless driving. *See id.* at 71-72; *see also* Order, 10/21/2015.[2] Appellant was sentenced as described above on December 29, 2015. Appellant timely filed a post-sentence motion for a new trial based on the weight of the evidence. *See* Post-Sentence Motion, 1/6/2016. Following additional briefing, the court denied Appellant's post-sentence motion and issued an opinion. *See* Trial Ct. Op. and Order, 4/7/2016.

Appellant timely filed a notice of appeal. The court did not order Appellant to file a Pa.R.A.P. 1925(b) statement.

On appeal, Appellant presents the following issues:

a. Has the Commonwealth produced sufficient evidence that [Appellant] was driving after imbibing with a blood alcohol percentage greater than .16 within two hours of operation where [Appellant] is found on the roadside near a vehicle and there is insufficient evidence of a time frame for the blood draw?

b. Does it shock the conscience where [Appellant] was convicted of driving after imbibing with a blood alcohol percentage greater than .16 within two hours of operation when the weight of the evidence is against finding of a two-hour time frame for the blood draw?

Appellant's Br. at 6.

In his first issue, Appellant challenges the sufficiency of the evidence to convict him of violating 75 Pa.C.S. § 3802(c). According to Appellant, the

---

[2] The court found Appellant not guilty of disregarding a traffic lane. *See* 75 Pa.C.S. § 3309(1).

Commonwealth failed to establish that his blood sample was procured within two hours of operating the vehicle. *See* Appellant's Br. at 11-14.

When examining a challenge to the sufficiency of the evidence, our standard of review is as follows:

> [W]hether there was sufficient evidentiary support for a jury's finding to this effect, the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008) (citations omitted).

The offense of DUI - highest rate of alcohol is defined as follows:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c). To establish the elements of this offense, the Commonwealth must offer proof that the accused's blood alcohol content was 0.16% or higher within two hours of operation of the vehicle. *See Commonwealth v. Segida*, 985 A.2d 871, 874 (Pa. 2009).

The necessity for the two hour time limit in subsections 3802(a)(2), (b), and (c) is grounded in the practical impossibility either of measuring blood alcohol level precisely at the time of driving or of calculating the exact blood alcohol level at the time of driving from a single blood alcohol measurement taken at some point in time after driving.

*Segida*, 985 A.2d at 879 (citing *Commonwealth v. Duda*, 923 A.2d 1138, 1141 (Pa. 2007)).

In support of his sufficiency of the evidence challenge, Appellant maintains that the Commonwealth failed to establish a connection between the time of the blood draw and the time that Appellant last operated his vehicle. *See* Appellant's Br. at 11-13.[3] His assertion is without merit. The Commonwealth presented a video in which Appellant stated that he left the bar around midnight. *See* N.T. at 20. The 911 call was received at 11:53 p.m. *See id.* Officer Eichler arrived around 12:30 a.m. *See id.* at 5. Appellant admitted to Officer Eichler that he had been driving the vehicle. *Id.* at 20. Appellant's blood was drawn at the DUI center at 12:52 a.m. *See id.* at 22. Appellant's blood alcohol content "was indisputably 0.23% when it was drawn at 12:52 a.m." Trial Ct. Op., 4/7/2017, at 2.

_____

[3] In support of his argument, Appellant cites *Commonwealth v. Segida*, 912 A.2d 841 (Pa. Super. 2006), *appeal granted on separate issue and reversed on other grounds*, 985 A.2d 871, 881 (Pa. 2009)). In that case, this Court recognized and the Commonwealth conceded that failure to prove the time when the defendant's blood was drawn at the hospital rendered the defendant's charge under 75 Pa.C.S. 7802(c) defective for failing to establish the requisite temporal connection to the DUI. *Segiga*, 912 A.2d at 847-850 (noting that Commonwealth had not precluded the possibility that the defendant injested alcohol after the accident had occurred).

Viewed in the light most favorable to the Commonwealth, this evidence was sufficient to establish that the blood test occurred within two hours of Appellant's departure from the Brookside Inn and operation of his vehicle. No relief is due on this ground.

In his second issue, Appellant contends that the verdict was against the weight of the evidence. This claim, too, is without merit.

Our standard of review is well-settled.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [factfinder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (quoting *Commonwealth v. Karns*, 50 A.3d 158, 165 (Pa. Super. 2012) (citation omitted), *appeal denied*, 65 A.3d 413 (Pa. 2013)).

Appellant reiterates his previous claim that the Commonwealth did not offer evidence to prove when Appellant had last driven the vehicle in relation to the 911 call or Officer Eichler's arrival at the scene. At trial, Appellant and his girlfriend testified that the girlfriend was driving the car that night. *See* N.T. at 23-53. According to Appellant's version of the events, his girlfriend

drove the truck into a ditch, and he was waiting in the cold for over an hour for her to bring a tow truck.  *See* Appellant's Br. at 15.  Appellant asserts that the Commonwealth should have established the age of tire tracks in the snow to demonstrate when his last operation of the truck was.  *Id.* at 16.  Thus, Appellant claims, it was "pure speculation" for the court to conclude that the blood test was taken within two hours of his last operation of the vehicle.  *Id.*

On a video shown at trial, Appellant stated that he left the bar at approximately midnight.  *See* N.T. at 20.  The truck was found less than one mile from the bar where Appellant was drinking.  *See* N.T. at 41.  Officer Eichler responded to the 911 call sometime between midnight and 12:30 a.m., and Appellant's blood was well over the limit for DUI - highest rate of alcohol at 12:52 a.m.  *See* Trial Ct. Op., 4/7/2017, at 3.  According to the court, Officer Eichler testified credibly that Appellant acknowledged he was driving his truck that evening.  Thus, the court did not believe that Appellant's girlfriend drove the truck into the ditch.  *See id.* at 3-4.  The court also believed Officer Eichler's testimony that there were no visible tire tracks and that the weight of the evidence established that Appellant was not standing on the road for over an hour.  *See id*.  Thus, the court found Appellant's version of the events "simply not credible."  N.T. at 71.

It was the function of the judge as fact-finder to evaluate the credibility of the witnesses and determine the weight to accord their testimony.  As discussed above, the timing of the blood draw was not pure

speculation, rather it was proved by the Commonwealth through testimony, circumstantial evidence, and video. Accordingly, we discern no palpable abuse of discretion.

Judgement of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2017