J-S67019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
STEVEN GUILFORD :
:
Appellant : No. 1241 EDA 2017

Appeal from the Judgment of Sentence June 23, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003279-2012

BEFORE: OTT, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED DECEMBER 04, 2018**

Steven Guilford appeals from the judgment of sentence imposed

following his convictions for possession of a firearm prohibited, carrying a

firearm in public in Philadelphia, possessing an instrument of crime with intent,

and recklessly endangering another person.[1] Appellant claims that the verdict

was against the weight of the evidence. We affirm.

The trial court set forth the history of this case as follows:

On January 1, 2012, at approximately 2[:00 a.m.], Officer [Pablo]
Rivera and Officer DeJesus[2] were finishing up with a disturbance
at the Blue Moon Hotel located at 5105 Westminster Avenue in
Philadelphia, Pennsylvania. As the two police officers were exiting
the hotel, facing [s]outhbound from Westminster Avenue, they
observed three African American males across a park walking

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105(a)(1), 6108, 907(a), and 2705, respectively.

[2] Officer DeJesus's first name is not in the certified record.

northbound on Ramsey Street. One of the males, who Officer Rivera described as "taller with a black baseball hat and facial hair," was walking with his right hand in the air, discharging a firearm. Officer Rivera stated that the other two males were smaller, clean shaven, and were not wearing baseball hats.

When the police officers observed the incident, they were standing on the steps of the hotel, which were elevated about 4 feet from the sidewalk. Officer Rivera stated that the park lights were on at the time, as well as street lamps. He explained that he knew the taller male with the facial hair and baseball hat was shooting the gun because "he heard the sounds and could see the muzzle flashes." Immediately after they observed the incident, both officers got into their patrol car and drove around to 400 Ramsey Street. Upon [the officers] exiting the patrol car, the two shorter males instantly put their hands up and went to a fence. Officer Rivera requested that [Appellant] put his hands up, but instead he started walking backwards about five feet with his hands to his back, and then quickly ran to the park. Officer Rivera attempted to chase Appellant to the 4900 block of Reno Street, which was full of abandoned buildings, foliage, debris, fencing and clutter, but was unable to locate Appellant. Instead, he heard noises, "such as stepping on tree branches and leaves."

At that time, in response to Officer Rivera's radio call, other officers arrived at the scene and they contained the area, set up a perimeter and called the K-9 unit. After the K-9 unit arrived, they found Appellant rolled up in an orange construction fence near 4944 Reno Street. Once they pulled the dog off of Appellant, the officers placed him in handcuffs and walked him out of the alley to where Officers Rivera and DeJesus were waiting. They immediately identified Appellant as the male who was firing the handgun. Although police attempted to search the alley for the firearm, "there was so much trash that it was almost impossible to find anything." Southwest Detectives attempted to search the alley again at 8[:00 a.m.], but were unable to recover a firearm.

Detective [James] Horn from Southwest Detectives did, however, recover seven 9-millimeter fired cartridge casings from the scene. The Firearm Identification Unit ("FIU") report indicated that of the seven cartridge casings that were found, six of them were crushed/dented. Detective Horn testified that this was not unusual, as casings were often crushed/dented by cars before they are able to hold the scene. The FIU report also indicated,

and defense counsel stipulated that Appellant is ineligible to carry or possess a firearm under 18 Pa.C.S.[] §6105(b).

Trial Ct. Op., 1/17/18, at 1-3 (citations omitted).

The trial court also set forth the procedural history of this case.

On January 1, 2012, Appellant was arrested and charged with Possession of a Firearm Prohibited; Carrying a Firearm in Public in Philadelphia; Firearms Not to be Carried without a License;[3] Possession of an Instrument of Crime with Intent; and Recklessly Endangering Another Person. Following a preliminary hearing on March 13, 2012, all charges were held for court. On April 29, 2013, Appellant knowingly and voluntarily waived his right to a jury trial and pled not guilty to all charges brought against him. That same day, the Honorable Sean F. Kennedy found Appellant guilty of Possession of a Firearm Prohibited, Carrying a Firearm in Public in Philadelphia, Possession of an Instrument of Crime, and Recklessly Endangering Another Person. Appellant was found not guilty as to the charge of Firearms Not to be Carried without a License.

On June 23, 2014, the [c]ourt sentenced Appellant to 5 to 10 years for Possession of a Firearm Prohibited, 1 to 2 years for Carrying a Firearm in Public in Philadelphia to run consecutive, and no further penalty for Possession of an Instrument of Crime and Recklessly Endangering Another Person. The total aggregate sentence was 6 to 12 years. The Judge also requested therapy and mental health treatment, as well as credit for time served.

On June 27, 2014, Appellant filed a [counseled] Post-Sentence Motion [claiming that the verdict was against the weight of the evidence], which was denied by operation of law on October 27, 2014. On April 27, 2015, [the court docketed Appellant's first] petition for post-conviction relief. On June 17, 2016, the [c]ourt appointed David Rudenstein, Esq. to represent Appellant in his appeal. Under these circumstances, the newly appointed counsel filed an amended petition for post-conviction relief on December 1, 2016. On March 20, 2017, [Appellant]'s appeal rights were reinstated *nunc pro tunc*. David Rudenstein filed a timely Notice of Appeal on behalf of Appellant on April 17, 2017 with the

---

[3] 18 Pa.C.S. § 6106(a)(1).

> Superior Court of Pennsylvania. On May 22, 2017, Appellant filed a concise statement of matters complained of on appeal.

*Id.* at 3-4 (citations omitted).

Appellant's sole issue on appeal states: "Is [Appellant] entitled to a new trial where, as here, the verdict is not supported by the greater weight of the evidence?" Appellant's Brief at 3.

Appellant argues that the verdict was against the weight of the evidence because Officer Rivera's "inherently unreliable identification" lacked corroboration. *Id.* at 10. He claims that Officer Rivera had never encountered Appellant prior to this incident, Appellant was a city block away, the park was dark, and Officer Rivera was not using any visual aids when making his observations from across the street. *Id.* at 9-10. Appellant adds that no handgun was recovered and that "there was a complete lack of forensic ballistics evidence linking [Appellant] to any firearm." *Id.* at 10. In support of his weight claim, Appellant cites to cases discussing the sufficiency of the evidence.[4] *Id.* at 10-11 (citing **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993), and **Commonwealth v. Farquharson**, 354 A.2d 545 (Pa. 1976)). Ultimately, Appellant maintains that the verdict was against the weight of the evidence and that he should be awarded a new trial.

_____

[4] As discussed in more detail below, cases discussing the sufficiency of the evidence involve a different standard of review. **See Commonwealth v. Richard**, 150 A.3d 504, 516 (Pa. Super 2016) ("[A] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, 'but questions which evidence is to be believed.'" (citation omitted)).

Our standard of review regarding challenges to the weight of the evidence is well-settled:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [fact-finder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted).

> We have explained that

> [a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Id.* (citation omitted). Further, "[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the

trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Id.* (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]t is also well-settled that a defendant must present his challenge to the weight of the evidence to the trial court for a review in the first instance either in a post-sentence motion, by written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Richard*, 150 A.3d 504, 516 (Pa. Super 2016) (citations omitted).

Here, the evidence at trial established that Officer Rivera, accompanied by Officer DeJesus, observed three black males walking across the park and towards the officers. N.T. Waiver Trial, 4/29/13, at 14. One of the three males was taller than the other two, had a beard, and wore a baseball cap, while the other two were smaller and clean shaven. *Id.* at 18. The taller black male, with his right hand up in the air, discharged a firearm. *Id.* at 14. Officer Rivera witnessed the incident from across the park, approximately half a block away. *Id* at 16. The area was illuminated by street lamps and park lights. *Id.* at 17, 52. Officer Rivera testified that he knew the male was shooting a gun because he heard the sounds and saw the muzzle flashes. *Id.* at 18.

The officers got into their patrol car and drove to where the three males were. *Id.* Upon exiting the patrol car, the two smaller males put their hands up, but the taller male, who Officer Rivera identified as Appellant, retreated with his hands to his back and took off running. *Id.* at 19-20. Officer Rivera chased after Appellant to a location where there were "abandoned buildings[,] a lot of foliage and debris, fencing, [which was] real cluttered" and was difficult to walk through. *Id.* at 21. Other officers arrived and they called the K-9 Unit, which found Appellant under an orange construction fence. *Id.* at 22, 37. After the officers handcuffed and removed Appellant from the alleyway, Officers Rivera and DeJesus identified Appellant as the person they saw discharging the firearm. *Id.* at 22-23.

The officers recovered seven nine-millimeter fired cartridge casings from the scene, which were fired from the same gun. *Id.* at 45, 53. Although no gun was recovered, the alleyway into which Appellant ran "was overgrown with trash, the backs of some of the houses were crumbling, there was rubble, [and the officers] could have spent a week there looking." *Id.* at 47. Moreover, at trial, Appellant stipulated that he is ineligible to possess or carry a firearm. *Id.* at 54.

Accordingly, we conclude the trial court did not abuse its discretion. *See Landis*, 89 A.3d at 699.[5]

_____

[5] As noted above, Appellant's brief seems to conflate claims for weight and sufficiency of the evidence, as he cites to *Karkaria* and *Farquharson* for the

Judgment of sentence affirmed.


Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/4/18

_____

proposition that a conviction may not be based on "surmise or conjecture." **See** Appellant's Brief at 10-11. Specifically, Appellant claims that the "evidence was insufficient to sustain a verdict of guilty due to the lack of corroborating evidence" to support Officer Rivera's in-court identification. **Id.** at 10. This claim lacks merit because, as this Court has held, an in-court identification of a defendant "is by itself sufficient to establish the identity element of that crime." **See Commonwealth v. Johnson**, 180 A.3d 474, 478 (Pa. Super. 2018) (citations omitted); **see also Commonwealth v. Wilder**, 393 A.2d 927, 928-29 (Pa. Super. 1978) (finding positive identification by police officer sufficient where the officer "observed the appellant at the scene of the crime with another defendant, with crowbar in hand, actually prying open the metal grate at the men's store").