J-S44031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHELLE JOY WIDEL | : | |
| | : | |
| Appellant | : | No. 701 MDA 2020 |

Appeal from the Judgment of Sentence Entered February 25, 2020
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000361-2019

BEFORE: BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED OCTOBER 28, 2020**

Michelle Joy Widel (Appellant) appeals from the judgment of sentence entered in the Schuylkill County Court of Common Pleas, following her bench trial convictions of, *inter alia*, 75 Pa.C.S. § 3802(c), driving under the influence—highest rate of alcohol (DUI .16); 75 Pa.C.S. § 3362(a)(3), exceeding the speed limit; and 75 Pa.C.S. § 3309(1), failure to operate her vehicle within the roadway laned for traffic. We vacate in part, affirm in part, and remand for further proceedings consistent with this memorandum.

On November 21, 2018, at approximately 7:00 p.m., Appellant was pulled over after Sergeant Raymond W. O'Donnell observed her to be traveling at 66 miles per hour in a zone with a posted speed limit of 45 miles per hour.[1] N.T. Trial, 1/9/20, at 5-7. Sergeant O'Donnell testified that Appellant was not

---

[1] November 21, 2018 was the Wednesday immediately prior to Thanksgiving.

able to provide a proof of insurance during the stop.[2] *Id.* at 7-8. Appellant testified that she had older insurance cards, but had not printed her most current insurance card as she was very busy with school at that time. *Id.* at 38. During the traffic stop, Sergeant O'Donnell saw two wine bottles in Appellant's vehicle, one of which was open and approximately half full. *Id.* at 7. He testified that he smelled alcohol both inside the vehicle and on Appellant's person, and saw that Appellant's eyes were glassy and bloodshot; he also observed her speech to be slurred. *Id.* at 8. He administered a preliminary breath test several times. *Id.* at 40-41, 54. One of the repetitions of the preliminary breath test showed the presence of alcohol, and Appellant was arrested. *Id.* at 8-9. Appellant testified at trial that she had consumed one glass of wine at home, and had then gone to Thanksgiving dinner with her grandparents, where she consumed approximately two glasses of wine; her testimony reflected consumption of two to three glasses of wine between 1:00 p.m. and 6:00 p.m. *Id.* at 33-34, 39.

Sergeant O'Donnell asked her to pull her vehicle further off the road so that it would not be towed. N.T. Trial at 11, 42-43. Appellant testified that Sergeant O'Donnell aimed his Taser at her while she was moving her car. *Id.* at 44. Sergeant O'Donnell denied having done so. *Id.* at 55. Appellant later consented to a blood draw, which took place within two hours of when

---

[2] Appellant was initially charged with a violation of 75 Pa.C.S. § 1786(f), operation of a motor vehicle without required financial responsibility, but that charge was withdrawn.

Sergeant O'Donnell observed her as she operated her vehicle. ***Id.*** at 11-13. At trial, Appellant stipulated to the contents of the laboratory report summarizing an analysis of the blood sample. ***Id.*** at 13.

On January 9, 2020, Appellant had a bench trial and was convicted of the above-enumerated offenses.[3] N.T. Trial at 61. The trial court imposed a sentence of six months' restrictive probation, as part of participation in the Schuylkill County Intermediate Punishment Program. Order of Sentence, 2/26/20; Trial Ct. Op., 6/8/20, at 4.[4] Appellant filed a timely appeal and complied with Pa.R.A.P. 1925(b).

Appellant poses the question presented as follows:

_____

[3] Appellant was also convicted of 75 Pa.C.S. § 3802(a)(1) as a first offense; the trial court determined that this conviction merged with her DUI .16 conviction and therefore she was not sentenced under this subsection of the DUI statute. ***See*** Order of Sentence, 2/26/20 ("Ct 1: Merges"). For the sentencing impact of this conviction, ***see*** 75 Pa.C.S. § 3804(a)(1), specifying sentencing conditions for a defendant convicted under 75 Pa.C.S. § 3802(a)(1) as a first offense. Appellant was found not guilty of careless driving, 75 Pa.C.S. § 3714(a), driving a vehicle in careless disregard for the safety of persons or property.

[4] The trial court's sentencing order specifies that Appellant shall serve a period of six months' probation subject to the standard conditions of restrictive probation, where the first fifteen days will be served as house arrest with electronic surveillance followed by 45 days of strict supervision and four months of probation. Order of Sentence, 2/26/20. Appellant was also sentenced to pay: $12 per day during house arrest, the costs of prosecution, a $1000 fine, $300 to the Substance Abuse Education Fund, $75 to the MCARE fund, $50 per month as a supervision fee upon completion of house arrest, $144 for her speed limit violation, and $102 for her lane violation. ***Id.*** She was further sentenced to complete DUI Alcohol Safety School, to attend and complete a CRN evaluation (a form of drug and alcohol assessment), to a 12-month suspension of her driving privileges, and to 12 months' use of an ignition interlock device. ***Id.***

Was the evidence presented at trial [ ] legally insufficient to support the guilty verdict on [DUI .16] where the Commonwealth's evidence established that [Appellant's BAC] might have been .161, but could also have been as low as .151 within two hours of her being in actual physical control of a motor vehicle and the Commonwealth failed to present testimony as to how the uncertainty measurement is calculated and what coverage probability means?

Appellant's Brief at 4.

This Court must determine whether the Commonwealth's toxicology report was sufficient to establish a violation of DUI .16, where the margin of error encompasses a blood alcohol concentration (BAC) less than .16, however slightly so. 75 Pa.C.S. § 3802(c) sets forth the elements of DUI .16 as follows:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c).

This is a sufficiency argument, and unlike a typical argument disputing weight or sufficiency of trial evidence where we defer to the factfinder who was able to experience the testimony in real time and thus was best positioned to weigh it, Appellant's argument hinges entirely on the interpretation of a toxicology report, submitted without testimony. The arresting officer's observations corroborate some level of inebriation, but the Commonwealth depended on laboratory toxicology testing to establish the level of DUI conviction, as it must. *See, e.g., Commonwealth v. Mongiovi*, 521 A.2d

429, 431 (Pa. Super. 1987) ("The nature of the [DUI] charge . . . **requires** the admission of technical evidence.").

The trial court opinion concludes that "a fair reading of the [toxicology] report given Appellant's driving observed by the Trooper confirms that the .161 BAC was an accurate finding warranting the imposition of the sentence." Trial Ct. Op., 6/8/20, at 3-4.

Appellant argues that because the Commonwealth did not submit expert testimony or other evidence establishing beyond a reasonable doubt that her BAC was .16 or above during the relevant time period, the evidence is insufficient to sustain the conviction for DUI .16. Appellant's Brief at 7-8. The Commonwealth counters that while "[o]f course, there is the possibility that the [BAC] may have been less than [.16] based on the lab report . . . [t]he Commonwealth need only present the trial court enough evidence to find that the elements of a crime exist." Commonwealth's Brief at 4.

Our standard of review when evaluating a sufficiency of the evidence claim is as follows:

> In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. If we find, based on that review, that the jury could have found every element of the crime **beyond a reasonable doubt**, we must sustain the defendant's conviction.

*Commonwealth v. Janda*, 14 A.3d 147, 164 (Pa. Super. 2011) (citation omitted, emphasis added). In this scenario, even applying the "light most

favorable" aspect of our standard does not alter the fact that a margin of error is a mathematical certainty, a fixed number range that is not altered regardless of favorable lighting.

The laboratory report reads, in pertinent part, as follows:

**Positive Findings:**

| **Compound** | **Result** | **Units** | **Matrix Source** |
|---|---|---|---|
| Ethanol | 161 ± 10 | mg/dL | 001 – Blood |
| [BAC] | 0.161 ± 0.01 | g/100 mL | 001 – Blood |

Quantitative results are reported as Result +/- Uncertainty of Measurement (UM). Ethanol results are reported at a coverage probability of 99.73%; all other analytes are reported at a coverage probability of 95.45%.

NMS Labs Toxicology Report, Commonwealth Exh. 4, at 1.[5] This report indicates that the laboratory is 99.73% sure that its stated result is within 10 mg/dL, or 0.01 g/100 mL, of Appellant's actual BAC as expressed in the sample tested; that is, it is quite sure that the BAC in the sample was between .151 and .171.

*Mongiovi* makes clear that factfinders must rely on technical evidence when applying our DUI statute, which uses BAC levels to establish tiers of severity of the infraction. *Mongiovi*, 521 A.2d at 431; 75 Pa.C.S. § 3802. Because factfinders impart culpability and courts impose mandatory

---

[5] Though the individual who prepared the report certified therein that they would be available to testify at trial, *see* NMS Labs Toxicology Report, Commonwealth Exh. 4, at 1, there was no such testimony at trial and Appellant stipulated to the report itself.

sentencing options based on these tiers, it is vital that factfinders understand the toxicology evidence, its strengths, and its limitations. The very power of statistical evidence can become its undoing if it is misunderstood. If this case had gone to a jury and they had correctly understood the lab report's self-reported coverage probability of 99.73%, but not understood how to apply its uncertainty of measurement ranges, that jury might have made the same error that the Commonwealth and the trial court seem to have made here. *See* N.T. Trial, 56-59 (reflecting confusion as to whether the uncertainty of measurement ranges encompassed .151-.171 or .160-.162).

Our courts have been diligent in ensuring that evidence incorporating statistical probabilities is reliable and meets all standards of admissibility for scientific evidence. ***See, e.g., Commonwealth v. Blasioli***, 713 A.2d 1117 (Pa. 1998) (DNA match evidence establishing that the probability of a random occurrence in the general population of a DNA profile matching both defendant's and the crime sample was one in 10 billion was properly admitted). However, if factfinders do not understand how to apply that evidence, its value is greatly diminished and fundamental rights belonging to defendants and the Commonwealth may be exposed to unnecessary risk. "Mathematics, a veritable sorcerer in our computerized society, while assisting the trier of fact in the search for truth, must not cast a spell over him." ***People v. Collins***, 438 P.2d 33, 33 (Cal. 1968) (reversing conviction obtained with shoddy statistical evidence).

While most civil trials are decided by a "more probable than not" standard[6], a criminal conviction must be secured by establishing the elements of the charged crimes beyond a reasonable doubt. **In re Winship**, 397 U.S. 358, 364 (1970). In **Commonwealth v. Landis**, 89 A.3d 694 (Pa. Super. 2014), this Court reversed a conviction for DUI .16 "because the blood-alcohol test result of .164%, which was relied on by the Commonwealth, was subject to a 10% margin of error and there was no further evidence to sustain the jury's finding that [the defendant's BAC] was .16% or above within two hours of driving." **Id.** at 696.

The **Landis** Court reasoned as follows:

> In sum, the trial record did not contain a reasoned basis for accepting the specific reading of .164% as either accurate or precise. There was no support for a finding that the reading registered by the [blood sample testing] machine was any more reliable than the possible blood-alcohol levels within the 10% margin of error. Moreover, since there was no direct or circumstantial evidence regarding the possible applications of the 10% margin of error, the trial evidence required the jury to speculate that [the defendant's] actual blood alcohol content was .16% or higher within two hours of driving. **Such speculation defies the requirement that the [finder of fact] find all facts necessary for a conviction beyond a reasonable doubt**.

**Landis**, 89 A.3d at 701 (emphasis added). The Commonwealth has not distinguished **Landis**, and we are bound to apply its reasoning here. We conclude the evidence was insufficient to support Appellant's conviction of DUI

---

[6] "In a civil case, the plaintiff must prove his or her claims by a legal standard called a 'preponderance of the evidence.' Preponderance of the evidence means that a fact is more likely true than not." 5.00 Burden of Proof and Preponderance of Evidence, Pa. SSJI (CIV), 5.00.

.16 and vacate that portion of her judgment of sentence. We affirm Appellant's remaining convictions. Moreover, because "our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan." ***Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006).

Judgment of sentence vacated in part and affirmed in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2020