**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTY WILLIAM MANESS | : | |
| | : | |
| Appellant | : | No. 736 MDA 2018 |

Appeal from the Judgment of Sentence October 31, 2017
In the Court of Common Pleas of Fulton County Criminal Division at
No(s):  CP-29-CR-0000143-2016

BEFORE: SHOGAN, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:            **FILED DECEMBER 21, 2018**

Appellant Marty William Maness appeals from the judgment of sentence following his convictions for possession with intent to deliver and drug delivery resulting in death.[1]  Appellant claims that the evidence was insufficient to support his convictions, that the verdict was against the weight of the evidence, and that his sentence was unreasonable.  We affirm.

The trial court ably set forth the facts of this case and summarized the testimony presented at trial in its opinion denying Appellant's post-sentence motion.  *See* Trial Ct. Op., 4/3/18, at 3-9.  On October 6, 2017, a jury found Appellant guilty of the aforementioned crimes.  On October 31, 2017, the trial court sentenced Appellant to 108 to 240 months' incarceration.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S. § 2506(a), respectively.

Appellant filed a post-sentence motion on November 6, 2017, seeking in relevant part, a new trial or a modification of his sentence. On April 3, 2018, the trial court issued an opinion and order denying Appellant's post-sentence motion, and set forth its detailed reasoning for doing so.[2] **See generally** Trial Ct. Op., 4/3/18.

On May 2, 2018, Appellant timely appealed to this Court. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court issued an opinion relying on its April 3, 2018 opinion.

Appellant raises the following issues on appeal:

1. Whether the Commonwealth's evidence was sufficient to prove that [Appellant] possessed a controlled substance, being heroin or fentanyl, and delivered, either or both of those substances to [John Murray (the Victim).]

2. Whether the Commonwealth's evidence was sufficient to prove that [Appellant] delivered either heroin or fentanyl to [the Victim] and that that same heroin or fentanyl was subsequently used by [the Victim] resulting in his death[.]

3. Whether, in the alternative, the weight of the evidence was so weak and inconclusive such that no possibility of guilt should have been determined that [Appellant] delivered heroin or fentanyl to [the Victim.]

4. Whether, in the alternative, the weight of the evidence was so weak and inconclusive such that no possibility of guilt should have been determined that the same heroin or fentanyl

---

[2] We note that the trial court's denial of Appellant's post-sentence motion exceeded the 120-day disposition period. **See** Pa.R.Crim.P. 720(B)(3)(a). However, on February 13, 2018, the trial court granted Appellant's motion for an extension of time due to a change in defense counsel. **See** Pa.R.Crim.P. 720(B)(3)(b) ("Upon motion of the defendant within the 120-day disposition period, for good cause shown, the judge may grant one 30-day extension for decision on the motion.").

- 2 -

determined to have been delivered by [Appellant] was used by [the Victim] resulting in his death[.]

5. Whether [Appellant]'s sentence, while being within the sentencing guidelines, should be modified as being unreasonable considering the circumstances of the case[.]

Appellant's Brief at 6-7 (full capitalization omitted).

## Sufficiency of the Evidence

Appellant argues that the testimony of the witnesses, Melvin Pete Bowman and James Anthony Day, was not credible. *Id.* at 23. He claims that Bowman did not testify that he saw the Victim use the heroin. *Id.* at 20-21. Appellant further argues that Bowman "lied about his drug use that day and evening." *Id.* at 21. Regarding Day, Appellant claims that Day reported that he did not know what happened to the Victim and denied any drug use. *Id.* at 22. Appellant continues that Day "change[d] his story" after being incarcerated for a month and a half. *Id.* at 23.

We apply the following standard when reviewing a sufficiency claim:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh

the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

After our careful review of the record in this matter, we agree with, and adopt, the trial court's reasoning regarding this issue. *See* Trial Ct. Op., 4/3/18, at 10-11. We emphasize that issues regarding credibility of witnesses are challenges to the weight of the evidence and not challenges to the sufficiency of the evidence. *See Commonwealth v. Boxley*, 838 A.2d 608, 618 (Pa. 2003) (holding that claims regarding credibility of witnesses "although couched as challenges to the sufficiency of the evidence, essentially go to the weight of the evidence. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence, and to assess the credibility of witnesses." (citation omitted)). Accordingly, we conclude that the evidence was sufficient to allow a jury to conclude beyond a reasonable doubt that Appellant delivered heroin or fentanyl to the Victim, and that this delivery was responsible for the Victim's death. *See Palmer*, 192 A.3d at 89.

**Weight of the Evidence**

Appellant argues that during the search of Appellant's home, the police did not find evidence of heroin or fentanyl. Appellant's Brief at 25. Appellant further argues that "no items commonly associated with drug dealing were present from the search such as cash, drug receipts, or drug records." *Id.*

- 4 -

He continues that "[i]t is clear from Trooper [Bradley] Huff's testimony and the testimony of Mr. Bowman and Mr. Day that the evidence taken as a whole does not lead to a conclusion that [Appellant] was actively participating in the drug trade. *Id.* at 26. Appellant contends that because "the [t]rial [c]ourt did not give the weight necessary to [these] facts," he is entitled to a new trial. *Id.*

Our standard of review regarding challenges to the weight of the evidence is well-settled:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [fact-finder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted).

We have explained that

> [a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion

for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Id.* (citation omitted).

After careful review of the record, we agree with the trial court's reasoning regarding this issue. *See* Trial Ct. Op., 4/3/18, at 10-11. Accordingly, we conclude that the trial court did not abuse its discretion in finding that the verdict was not so contrary to the evidence so as to shock one's sense of justice. *See id.* at 12; *Landis*, 89 A.3d at 699.

## Modification of Sentence

Appellant argues that he took steps to save the Victim's life and that he called 911. Appellant's Brief at 27-28. He claims that this showed a "strong level of compassion on his part." *Id.* at 27. Appellant contends the trial court did not consider these mitigating factors, and therefore, the sentence was unusually excessive. *Id.* at 28.

Appellant is challenging the discretionary aspects of his sentence. Therefore, before reaching the merits of Appellant's claim, we inquire into:

(1) whether the appeal is timely; (2) whether [the a]ppellant preserved his issues; (3) whether [the a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the [S]entencing [C]ode.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citation omitted).

Instantly, Appellant preserved his issue in a post-sentence motion and timely appealed from the denial of his post-sentence motion. Appellant also included in his brief a Pa.R.A.P. 2119(f) statement. Further, Appellant has raised a substantial question for our review. *See Commonwealth v. Zeigler*, 112 A.3d 656, 662 (Pa. Super. 2015) (stating that "an excessiveness claim in conjunction with an assertion that the court did not adequately consider a mitigating factor may present a substantial question" (citation omitted)).

> Our standard of review in this context is as follows:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

After carefully reviewing the record, we agree with, and adopt, the trial court's reasoning as to this issue. *See* Trial Ct. Op., 4/3/18, at 13. We further add that the transcript of the sentencing hearing reveals that the trial court considered the pre-sentence investigation report, as well as the evidence submitted at trial. *See* N.T. Sentencing, 10/31/17, at 6; *see also*

- 7 -

***Commonwealth v. Seagraves***, 103 A.3d 839, 842 (Pa. Super. 2014) (holding that when "the trial court has the benefit of a pre-sentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors" (citation omitted)). The trial court also considered Appellant's "offenses, [his] criminal history, [his] work history, [his] education history, [his] family relationships, substance abuse history, and some additional information regarding [his] current drug and alcohol, mental health treatment history, and employment record." N.T. Sentencing, 10/31/17, at 6. Finally, the trial court found that prior efforts to rehabilitate Appellant were unsuccessful and that he was "a danger to [the] community as an addict and as a source and supplier of heroin." ***Id.***

Accordingly, we conclude the trial court did not abuse its discretion in denying Appellant's motion to modify his sentence. ***See Corley***, 31 A.3d at 296.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2018

- 8 -

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT
OF PENNSYLVANIA – FULTON COUNTY BRANCH

| Commonwealth of Pennsylvania | : | Criminal Action – Law |
|---|---|---|
| | : | |
| | : | No. 143-2016 |
| v. | : | |
| | : | Post-Sentence Motion |
| Marty W. Maness, | : | |
| Defendant | : | Honorable Angela R. Krom, J. |

## OPINION AND ORDER OF COURT

FULTON COUNTY
PENNSYLVANIA
FILED

APR 05 2018

PROTHONOTARY, CLERK OF COURTS,
CLERK OF ORPHANS COURT
REGISTER OF WILLS, RECORDER OF DEEDS

FULTON COUNTY
PENNSYLVANIA
FILED

APR 05

PROTHONOTARY, CLERK OF COURTS,
CLERK OF ORPHANS COURT
REGISTER OF WILLS, RECORDER OF DEEDS

**Before Krom, J.**

APPELLANT'S
EXHIBIT "C"

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | Criminal Action – Law |
| | : | |
| | : | No. 143-2016 |
| v. | : | |
| | : | Post-Sentence Motion |
| Marty W. Maness, | : | |
| Defendant | : | Honorable Angela R. Krom, J. |

## OPINION

Before the Court is Marty W. Maness's ("Defendant") *Post-Sentence Motion*, filed November 6, 2017. For the following reasons, Defendant's *Post-Sentence Motion* is denied.

## STATEMENT OF THE CASE

On October 5-6, 2017, after a trial by jury, Defendant was found guilty of delivery of a controlled substance[1] and drug delivery resulting in death.[2] On October 31, 2017, the Court imposed an aggregate sentence of 108 to 240 months in a State Correctional Institute. Defendant filed this *Post-Sentence Motion* on November 6, 2017. On November 14, 2017, the Court ordered that Defendant and the Commonwealth shall have 20 days from receipt of the transcripts to submit written argument in support of and in opposition to Defendant's *Post-Sentence Motion*. The Court granted Defendant's request for additional time to file his brief on February 13, 2018. On March 12, 2018, the Commonwealth filed a *Brief in Opposition to the Post-Sentence Motion*. Defendant filed a *Brief in Support of the Post-Sentence Motion* on March 15, 2018.

The Court has reviewed the record and the law and is now ready to render a decision.

---

[1] 35 P.S. § 780-113(a)(30).
[2] 18 Pa.C.S. § 2506.

2

## ISSUES

Defendant raises the following issues in his *Post-Sentence Motion*:

I.      Whether Defendant should be acquitted of delivery of a controlled substance and drug delivery resulting in death because there was insufficient evidence presented at trial to prove beyond a reasonable doubt that Defendant was the supplier of the heroin which resulted in Mr. Murray's death?

II.     Whether Defendant should be granted a new trial insofar as the verdict of finding Defendant guilty of delivery of a controlled substance and drug delivery resulting in death was against the weight of the evidence?

III.    Whether Defendant should be granted a new trial insofar as the Court erred by denying Defendant's *Omnibus Pre-Trial Motion to Suppress Evidence*?

IV.     Whether this Court should modify Defendant's sentence because the victim was a drug addict who chose of his own free will to engage in drug use?

## DISCUSSION

The Court will review the evidence presented at trial before addressing Defendant's arguments.

. The Commonwealth first presented Koah Hagen ("Ms. Hagen"), a paramedic from the McConnellsburg Volunteer Fire Department and Ambulance. Transcript of Proceedings of Trial, October 5, 2017, ("T.P. 10/5/17") at 22-23. On March 30, 2016, Ms. Hagen responded to an emergency call at a home on Thompson Road in Needmore, Pennsylvania.[3] Upon arrival at 6:26 P.M., Ms. Hagen found the victim John Murray ("Mr. Murray") lying unconscious and pulseless on the living room floor. Id. at 24. Ms. Hagen learned that the fire department attempted cardiopulmonary resuscitation ("CPR") on Mr. Murray, utilizing an automated external

---

[3] Needmore is located in Fulton County, Pennsylvania.

3

defibrillator ("AED") before she arrived. Id. at 25. The AED was unsuccessful because Mr. Murray had no heart activity. Id. at 26. Ms. Hagen then observed track marks consistent with heroin use on Mr. Murray's arm and administered Narcan.[4] Id. at 27. Unfortunately, Ms. Hagen was unsuccessful in resuscitating Mr. Murray. Id. at 28.

The Commonwealth next presented Melvin Pete Bowman ("Mr. Bowman").[5] Id. at 35-36. Mr. Bowman testified that Mr. Murray, James Anthony Day ("Mr. Day"), and he were all heroin addicts who frequently purchased heroin from Defendant.[6] Id. at 36-37. Mr. Bowman explained the transactional relationship he had with Defendant: Defendant would let Mr. Bowman know when he had heroin and Mr. Bowman would go to Defendant's house to make a purchase. Id. at 38. In some circumstances, Mr. Bowman sold heroin for Defendant and was allowed to keep some of the heroin for his own use. Id.

On the date of the incident, Mr. Bowman testified Mr. Murray drove him to Mr. Day's house. Id. at 39. The three individuals watched television for about an hour, until Defendant called Mr. Day to invite them over to his house. Id. Mr. Bowman explained he and Mr. Murray were "dope sick" and went to Defendant's house between 3:00 p.m. to 4:00 p.m., to "get well".[7] Id. at 39-40. Upon arrival, Mr. Bowman observed Defendant provide Mr. Murray with a heroin pack. Id. at 40. Mr. Bowman then went into the bathroom and when he came out, he noticed Mr. Murray was slouched over on the couch and was not breathing. Id. Mr. Bowman testified that Mr. Day and Defendant attempted to get Mr. Murray to breathe again by blowing into his mouth, closing his nose, and smacking his face. Id. at 41. At some point, Mr. Bowman, Mr. Day, and

---

[4] Narcan is a trade name for the drug naloxone.

[5] Mr. Bowman is known by his nicknames "Pete" and "Bo".

[6] Mr. Bowman explained he knew Mr. Murray and Mr. Day for several years. Mr. Murray was Mr. Bowman's best friend since high school. Mr. Day is Mr. Murray's brother-in-law of over fifteen years.

[7] Mr. Bowman later explained they brought their own kits to inject the heroin, but did not bring their own heroin or cash. A kit includes a spoon, a needle, and a little ball of cotton. Id. at 51.

4

Defendant believed Mr. Murray was breathing again and left him alone for the next thirty to forty-five minutes.[8] Id. Mr. Bowman then obtained a pack of heroin from Defendant and shot up as well. Id.

After using Defendant's heroin, Mr. Bowman noticed Mr. Murray was not breathing again. Id. Mr. Bowman testified Defendant put ice and water on Mr. Murray to try and get him to start breathing. Id. at 50. Defendant eventually called 911 and Trooper Bradley Huff ("Trooper Huff") of the Pennsylvania State Police arrived. Id. at 42. Mr. Bowman explained what happened to Trooper Huff, but initially concealed the facts regarding their heroin use. Id. at 42, 47. Trooper Huff confronted Mr. Bowman over his heroin use after observing Mr. Bowman's constricted pupils and profuse sweating. Id. at 48. Mr. Bowman did not immediately admit to his heroin use because he was embarrassed he was doing drugs while his "friend was sitting there out of it." Id. at 57.

The Commonwealth next presented Mr. Day.[9] Mr. Day testified he was a heroin addict who sold drugs for Defendant. Id. at 62. Mr. Day specified that Defendant would purchase the drugs in Baltimore and package the drugs at home. Id. Mr. Day then sold the packaged drugs for Defendant to support his own drug addiction.[10] Id. On the date of the incident, Mr. Day explained he went to Defendant's house with Mr. Murray and Mr. Bowman to purchase heroin from Defendant.[11] Id. at 61, 63. Mr. Day also testified Defendant provided Mr. Murray with a heroin pack. Id. at 63-64. Approximately ten to fifteen minutes later, Mr. Murray had difficulty breathing and began snoring loudly. Id. at 64, 66. Defendant then called 911 and the first

---

[8] Mr. Bowman explained Mr. Murray was sleeping and snoring, but appeared to be breathing.

[9] Mr. Day is known by his nickname "Jimmy". Mr. Day knew Mr. Murray for at least sixteen years and has known his brother-in-law Mr. Bowman for over twenty years. Id. at 59-60.

[10] Mr. Day explained he was not making any money from this arrangement, but merely sold Defendant's drugs to support his habit.

[11] Mr. Day also stated he was "dope sick" and was experiencing heroin withdrawal symptoms.

5

responders arrived. Id. at 66. When initially questioned by Trooper Huff, Mr. Day also omitted the details of his heroin use because he was in shock. Id. at 67, 72.

The Commonwealth next presented Trooper Huff. On March 30, 2016, Trooper Huff was dispatched to a call at 8926 Thompson Road in Needmore, PA. Id. at 82. Upon arrival at 6:28 p.m., Trooper Huff met with the emergency personal and identified the victim as Mr. Murray.[12] Id. at 83. After surveying the scene, Trooper Huff discovered a hypodermic needle behind a picture frame and a plastic bag with shortcut straws inside a flower pot. Id. at 84-85. Trooper Huff then interviewed Mr. Bowman, Mr. Day, Karen Amos ("Ms. Amos")[13], and Defendant. Id. at 86. According to Trooper Huff, Defendant stated Mr. Murray was sick, fell asleep, and eventually stopped breathing. Id. at 87. Trooper Huff further explained Defendant appeared nervous and was sweating. Trooper Huff also spotted track marks on Defendant's arm and noticed his constricted pupils. Id. When questioned about Trooper Huff's physical observations, Defendant admitted he uses heroin. Id. at 88.

After Trooper Huff interviewed Defendant, Trooper David Clemens ("Trooper Clemens") of the Pennsylvania State Police arrived on scene. Id. Trooper Clemens advised Trooper Huff to seize all of the witnesses' cell phones when he arrived in order to preserve the contents of the phones. Id. at 89-90. Trooper Huff then left the scene to prepare a search warrant while Trooper Clemens further interviewed the witnesses at the police station. Id. at 91-92, 98. Upon execution of the search warrant, Trooper Huff discovered shortcut straws, hypodermic needles, smoking bowls, and a black digital scale. Id. at 93-94. Trooper Huff testified he did not find any cash, heroin, or fentanyl. Id. at 101.

---

[12] Trooper Huff knew Mr. Murray because he was a victim in a previous unrelated case.
[13] Karen Amos is Defendant's girlfriend.

The Commonwealth next presented Captain Brian Harris ("Captain Harris") of the Pennsylvania Department of Corrections for an in-camera hearing.[14] Captain Harris testified he was the intelligence gathering captain who had access to the audio recordings on phone calls placed by inmates in March of 2016. Id. at 110. Captain Harris further testified he provided Trooper Clemens with audio recordings made by Defendant while he was incarcerated at SCI – Huntingdon. Id. at 111. Captain Harris also provided call data, which includes the date, time, and length of each phone call. Id. at 112.

The Commonwealth next presented Trooper Clemens. Trooper Clemens testified he requested the audio recordings of phone calls placed by Defendant at SCI – Huntingdon. Id. at 113. Upon reviewing the recordings, Trooper Clemens was able to identify Defendant's voice on the recordings. Id. at 115. The phones calls were admitted into evidence for the jury's consideration. Id. at 121.

The Commonwealth next presented Dr. Samuel Land ("Dr. Land"), a forensic pathologist from Allentown, PA. Dr. Land testified he performed an autopsy of Mr. Murray. Id. at 128. During his examination, Dr. Land observed needle track marks and darkly pigmented scars on Mr. Murray's right wrist. Id. at 130. Dr. Land also noticed Mr. Murray's heart was slightly enlarged and he had one atypical muscle inside his heart.[15] Id. at 130-131. Relying on the toxicological findings of morphine and fentanyl in Mr. Murray's blood, Dr. Land opined that Mr. Murray died of heroin and fentanyl toxicity. Id. at 132-134.

The Commonwealth next presented Nadine Koenig ("Ms. Koenig"), a toxicology chemist from Allentown, PA. Ms. Koenig testified she screened Mr. Murray's femoral blood, heart

---

[14] Captain Harris works at State Correctional Institute ("SCI") – Huntingdon. Captain Harris was presented outside the presence of the jury.

[15] Dr. Land stated it was possible the atypical muscle in the heart could have caused a cardiac arrhythmia. However, Dr. Land ruled out this possibility based on the clinical information that Mr. Murray was using opiates and developed snoring respirations with apneic episodes.

7

blood, kidney, bile, brain, liver, and vitreous fluid for alcohol and drugs. Id. at 143-144. Ms. Koenig specifically identified 135 nanograms of morphine in the femoral blood, 11.8 nanograms per milliliter of fentanyl in the femoral blood, and 8 nanograms per milliliter of 6-monoacetylmorphine in the vitreous blood. Id. at 147. Ms. Koenig then sent her toxicology report to Dr. Land. Id. at 142.

The Commonwealth again called Trooper Clemens. Relying on his training and experience as a criminal investigator, Trooper Clemens testified that fentanyl is commonly sold and mixed with heroin because it makes heroin more potent. Id. at 152. Trooper Clemens further explained it is common for addicts to seek out heroin laced with fentanyl because it is stronger. Id.

On the second day of trial, Defendant presented Trooper Huff. Defense counsel asked several questions regarding Trooper Huff's search of the residence. Trooper Huff reiterated he gathered the witnesses' cell phones after Trooper Clemens arrived on scene. Transcript of Proceedings of Trial, October 6, 2017, ("T.P. 10/6/17") at 12. Trooper Huff testified he did not gather Mr. Murray's phone until he executed the search warrant. Id. at 13. Trooper Huff admitted the inventory of the search did not describe where the clear plastic bag containing shortcut assorted paraphernalia was found in the house. Id. at 18-19. Trooper Huff also admitted he did not collect the needles. Id. at 20. However, Trooper Huff explained there was no evidentiary to the needles and it was a biological safety issue to collect the needles. Id. Last, Trooper Huff reiterated he did not discover any fentanyl, heroin, or cash. Id.

Defendant last presented Mr. Day. Mr. Day testified he deleted all of his text messages on his phone when he was at Defendant's house. Id. at 25. Mr. Day admitted he texted Mr. Murray

8

to request a ride so that he could deliver heroin in Hancock, MD. Id. at 25-26. Last, Mr. Day

admitted he hid some of the heroin he purchased from Defendant prior to the police arriving. Id.

The Court now turns to Defendant's arguments.

## I.    Sufficiency of the Evidence

Defendant first argues there was insufficient evidence presented at trial to convict him of

delivery of a controlled substance and drug delivery resulting in death. Specifically, Defendant

argues Mr. Bowman and Mr. Day were not credible witnesses because they initially lied to the

police about using heroin. The standard for evaluating sufficiency of the evidence claims is well

established:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part, or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. McClendon, 874 A.2d 1223, 1228 (Pa. Super. 2005) (citations omitted).

For a defendant to be convicted of delivery of a controlled substance pursuant to 35 P.S.

§ 780-113(a)(30), there must be evidence that he knowingly made an actual, constructive, or

attempted transfer of a controlled substance to another person without the legal authority to do

so. See Commonwealth v. Murphy, 844 A.2d 1228, 1233-1234 (Pa. 2004). "A defendant actually

9

transfers drugs whenever he physically conveys drugs to another person." Id. at 1234.

Additionally, for a defendant to be convicted of drug delivery resulting in death pursuant to 18 Pa.C.S. § 2506(a), there must be evidence that he intentionally distributed a controlled substance and the death of another person resulted from this distribution. See Commonwealth v. Storey, 167 A.3d 750, 758 (Pa. Super. 2017).

Here, the evidence presented by the Commonwealth was sufficient to support convictions for delivery of a controlled substance and drug delivery resulting in death. Mr. Bowman and Mr. Day testified that they, along with Mr. Murray, were heroin addicts who frequently sold heroin for Defendant in exchange for a small amount of heroin they could keep for personal use. T.P. 10/5/17 at 36-37, 62. Mr. Bowman and Mr. Day testified they, along with Mr. Murray, were experiencing symptoms of heroin withdrawal and went to Defendant's house to obtain and use heroin on March 30, 2016. Id. at 39-40, 61-63. Upon arriving, Mr. Day and Mr. Bowman observed Defendant provide Mr. Murray with a heroin pack. Id. at 40, 63-64. Mr. Day and Mr. Bowman then testified in detail regarding Mr. Murray's physical state after injecting Defendant's heroin; Mr. Murray became unconscious and had great difficulty breathing before his death. Id. at 41, 64-66. Based on Ms. Koenig's toxicological findings of morphine and fentanyl in Mr. Murray's blood, Dr. Land opined that Mr. Murray died of heroin and fentanyl toxicity. Id. at 132-134.

Thus, viewing all the evidence in the light most favorable to the Commonwealth, there was sufficient evidence to enable the jury to find Defendant guilty of delivery of a controlled substance and drug delivery resulting in death. The evidence showed Defendant intentionally provided Mr. Murray with a heroin pack and Mr. Murray died shortly after injecting it. Furthermore, the Court is unpersuaded by Defendant's argument that Mr. Bowman and Mr. Day

10

were not credible. The Court does not determine the credibility of witnesses or their testimony; to do so would usurp the role of the jury. Commonwealth v. Bruce, 916 A.2d 657, 665 (Pa. Super. 2007) (citation omitted).

Accordingly, Defendant is not entitled to acquittal of his convictions for delivery of a controlled substance and drug delivery resulting in death.

## II. Weight of the Evidence

Defendant second argues his convictions for delivery of a controlled substance and drug delivery resulting in death were against the weight of the evidence. Specifically, Defendant argues Mr. Bowman and Mr. Day were not credible witnesses because they initially lied to the police about using heroin.[16] The standard for evaluating weight of the evidence claims is well established:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Commonwealth v. Bruce, 916 A.2d at 665 (citation omitted). Stated differently, a court may grant a new trial because the verdict is against the weight of the evidence only when the verdict rendered is "so contrary to the evidence as to shock one's sense of justice." Id.

Here, Defendant does not assert any facts which are "so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Id. Defendant merely attacks the credibility of Mr. Bowman and Mr. Day because they initially lied to the

---

[16] It appears to the Court that Defendant raises the same argument for both his claims.

11

police regarding their heroin use. It is the jury's role to determine the credibility of a witness and resolve any inconsistencies; the jury is entitled "to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder." Commonwealth v. Flor, 998 A.2d 606, 626 (Pa. 2010) (citation omitted). As discussed above, there was sufficient evidence to enable the jury to find Defendant guilty of delivery of a controlled substance and drug delivery resulting in death beyond a reasonable doubt. Furthermore, "[a] motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict." Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000).

Thus, the verdict is not against the weight of the evidence because it is not "so contrary to the evidence as to shock one's sense of justice." Commonwealth v. Bruce, 916 A.2d at 665. Accordingly, Defendant is not entitled to a new trial.

## III. Suppression of Cell Phones and Preclusion of Telephone Calls

Defendant third argues this Court erred by denying Defendant's *Motion to Suppress Evidence*, which sought to suppress cell phones obtained at the scene of the alleged crime. Defendant also argues this Court erred by admitting evidence of telephone calls between Defendant and Ms. Amos while Defendant was incarcerated.

It appears to the Court that Defendant has abandoned these claims for purposes of this *Post-Sentence Motion*.[17] To the extent it appears Defendant is continuing with his claim that we erred by denying his *Motion to Suppress Evidence*, we rely on our April 4, 2017 Opinion. Furthermore, we need not address the claim challenging the admissibility of the telephone calls until that issue is properly before the Court.

---

[17] In Defendant's *Brief in Support*, Defense counsel states he is presently without sufficient information to support the validity of these claims and is requesting to raise them on further appeal if necessary.

12

## IV. Motion to Modify Sentence

Defendant last requests this Court reconsider or modify his sentence. Defendant concedes we sentenced him within the standard range, but argues that a sentence in the mitigated range is more appropriate because Defendant engaged with known drug addicts who chose of their own free wills to engage in drug use.

This Court refuses to modify Defendant's aggregate sentence of 108 to 240 months incarceration merely because the deceased victim in this case was a drug addict. Defendant made a conscious decision to provide Mr. Murray with heroin, which resulted in Mr. Murray's untimely death. We agree with the Commonwealth: Defendant is a danger to this community and his actions will not be excused simply because Mr. Murray was a drug addict. This Court considered the factors set out in 42 Pa.C.S. § 9721(b) and imposed a sentence within the standard range of sentencing.

Accordingly, Defendant's request to reconsider or modify his sentence is denied.

### CONCLUSION

Ultimately, this Court finds Defendant's *Post-Sentence Motion* to be without merit. Accordingly, Defendant's *Motion* is denied.

An Order follows:

13